UNITED STATES *v.* BACHARACH INDUSTRIAL INSTRUMENT CO.
(No. 2596) [1]

CONSTRUCTION, PARAGRAPH 368, TARIFF ACT OF 1922—CLOCKS AND CLOCK-
WORK MECHANISMS—PRESSURE INDICATORS.

Paragraph 368, Tariff Act of 1922, was intended for the protection of manu-
facturers of clocks and clockwork mechanisms. It does not include instruments
which do not automatically perform their function, but depend for such per-
formance upon the manipulation of the operator. Indicators for determining
the pressure in steam and gas engines and air compressors are not within the
paragraph and the judgment of the Board of General Appraisers sustaining
their classification as manufactures of metal under paragraph 399 is affirmed.

## United States Court of Customs Appeals, November 21, 1925

[Affirmed.]

APPEAL from Board of United States General Appraisers, Abstract 49064

*William W. Hoppin,* Assistant Attorney General (*Marcus Higginbotham,*
special attorney, of counsel), for the United States.
*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellee.

[Oral argument Oct 7, 1925, by Mr. Hoppin and Mr. Tompkins]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD,
Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The articles of importation involved in this case are eight indicators,
for use in connection with steam and gas engines and electrically
driven air compressors. Each indicator is inclosed in a wooden case,
together with its various accessories and tools. The collector classified
the same as measuring devices or mechanisms, under paragraph 368
of the Tariff Act of 1922, the material portion of which is as follows:

368. Clocks and clock movements, including lever clock movements, and
clockwork mechanisms, cased or uncased, whether imported complete or in parts,
and any device or mechanism having an essential operating feature intended for
measuring time, distance, or fares, or the flowage of water, gas, electricity, or
similar uses, or for regulating or controlling the speed of arbors, drums, disks, or
similar uses, or for recording, indicating, or performing any operation or function
at a predetermined time or times, any of the foregoing whether wholly or partly
complete or knocked down (in which condition they shall be appraised at the
valuation of the complete article);    * * *

On appeal to the Board of General Appraisers they were held to
be manufactures of metal not specially provided for, under paragraph
399 of said act, and the protest was accordingly sustained. The
Government appeals.

Paragraph 399 is as follows:

399. Articles or wares not specially provided for, if composed wholly or in
chief value of platinum, gold, or silver, and articles or wares plated with platinum,

---

[1] T. D. 41203.

gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 60 per centum ad valorem; if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, but not plated with paltinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 40 per centum ad valorem.

The indicators in question are articles of mechanism, **made of** base metal, and are used for two principal purposes, first, to determine the mean effective pressure which an engine produces or which a pump consumes during one revolution; second, to test the correctness of the setting of the valves in an engine, to ascertain whether the valves are large enough, to determine, in the case of gas engines, whether the spark is set correctly and to determine whether the pistons are tight or leaky. The device consists principally of a cylinder and an attached movable drum. The cylinder is attached to the cylinder of the engine to be tested by means of a connection having a cock therein. To use the instrument the cock is opened and pressure admitted from the engine cylinder into the base of the indicator cylinder. This causes a piston in the cylinder, regulated by a reciprocating spring, to rise or fall as the pressure is increased or diminished. This small piston, in thus rising and falling, motivates a lever having a pencil affixed to its end. This pencil, in turn, travels over the surface of a sheet of paper or card attached to the surface of the drum, which drum, in turn, is oscillated back and forth by means of a string, one end of which is attached to the crosshead of the engine and one end to the drum. In this way a curve is traced upon the card which graphically depicts the pressure at all times during a complete revolution of the engine. When used, the operator turns the cock and admits the pressure for a sufficient time only to get a curve representing one revolution of his engine, which varies according to the speed of the engine, and in case of an engine operating at 300 revolutions a minute would require but one-fifth of a second. The major use of these devices is for the testing of valves.

An inspection of paragraph 368 leads to the conclusion that this paragraph was intended to cover clocks and similar mechanisms. It is the successor to paragraph 161 of the tariff act of October 3, 1913, which related entirely to clocks, watches, and parts thereof. The Congress, however, in arranging said paragraph 368, inserted in this clock paragraph the following new language:

and any device or mechanism having an essential operating feature intended for measuring time, distance, or fares, or the flowage of water, gas, electricity, or similar uses, or for regulating or controlling the speed of arbors, drums, disks, or similar uses, or for recording, indicating, or performing any operation or function at a predetermined time or times.

This language seems naturally to divide itself into three general classes of mechanical devices—first, devices such as meters for

measuring the quantity of certain specified things; second, devices such as those controlling the rotation of phonograph disks, for the control of the speed of certain specified things; and, third, devices such as alarm clocks, to perform some function at a predetermined time.

The indicator in the case at bar, in our opinion, does not fall within any of these classes. It does not measure the quantity of anything; it does not regulate or control anything; it is true that it supplies data by which the operator may be better enabled to regulate his engine, but in itself it regulates or controls nothing; it does not perform any function at some time which has been determined in advance; it operates only when the operator turns a cock and admits pressure into its cylinder. It is, therefore, not a device which will automatically function at a certain appointed time, but will never function without manipulation.

Our conclusion is that Congress did not intend to include the indicators in question within the scope of paragraph 368. They are devices much like pressure gauges, thermometers, and other similar accessories, which aid the operator of a machine to secure efficiency and safety of its operation. But they are not the devices mentioned *eo nomine* in the paragraph, nor are they *similar thereto*, for to be thus similar they must have a use substantially as the devices specifically named in the paragraph. This, we have seen, they do not have. They were properly classified as articles manufactured of metal, under paragraph 399.

This conclusion is reinforced by a reading of the hearings of the Ways and Means Committee of the House of Representatives at the time paragraph 368 was under consideration. The committee had before it the Summary of Tariff Information, 1921, by the United States Tariff Commission, pages 494, 495. Here was given exact information of the imports of clocks and parts, gas and water meters, and time detectors, with a recommendation for the insertion of the new language substantially as we have seen it thereafter appeared in the act. Representatives of the clock manufacturers of the United States also appeared before the committee. H. of R. Hearings, Part II, 1023–1040. These representatives insisted upon increased duties upon clocks, parts, and *clockwork* mechanisms and recommended to the committee the adoption, substantially, of the additional provision approved by the Tariff Commission as necessary for the protection of the industry in the United States. Thereafter these recommendations were adopted by the committee with some slight changes, one being the addition of the words "distance or fares," in the first subdivision of the additional provision. The manifest intent was to write a paragraph to protect the clock and clock mechanism industry.

The judgment of the Board of General Appraisers is *affirmed*.