UNITED STATES *v.* FREITAG & SONS, INC., ET AL. (No. 3698)[1]

United States Court of Customs and Patent Appeals, February 26, 1934

*Charles D. Lawrence*, Assistant Attorney General (*Richard E. FitzGibbon* and *Ralph Folks*, special attorneys, of counsel), for the United States.

*Siegel & Mandell* (*Samuel T. Siegel* of counsel) for appellees.

[1] T. D. 46961.

[Oral argument December 11, 1933, by Mr. Folks and Mr. Siegel]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT
Associate Judges

BLAND, Judge, delivered the opinion of the court:

This appeal involves the construction of paragraph 1510 of the Tariff Act of 1930 which reads as follows:

PAR. 1510. *Buttons commonly known as agate buttons, and buttons made in imitation of or similar to pearl, shell, or agate buttons* (except buttons commonly known as Roman pearl and fancy buttons with a fish-scale or similar to fish-scale finish), *1½ cents per line per gross and 25 per centum ad valorem;* parts of buttons and button molds or blanks, finished or unfinished, not specially provided for, and all collar and cuff buttons and studs composed wholly of bone, mother-of-pearl, ivory, vegetable ivory, or agate, and buttons not specially provided for, 45 per centum ad valorem. (Italics ours.)

The Government has here appealed from the judgment of the United States Customs Court, Third Division, which sustained the importers' protests against the collector's classification of and assessment with duty, at 1½ cents per line per gross and 25 per centum ad valorem, under said paragraph 1510, on certain buttons more particularly hereinafter described.

The only claim in importers' protests relied upon here is that the merchandise was properly dutiable at 45 per centum ad valorem under said paragraph 1510 as "buttons not specially provided for."

At the trial in the Customs Court, appellees introduced Exhibits 1 to 7, inclusive, each exhibit being representative of the merchandise covered by one or more of the protests involved. The testimony with reference to the various exhibits representing the merchandise and other exhibits introduced in the case is voluminous. A short description of the various exhibits, and reference to certain portions of the testimony will suffice for our purposes.

Exhibit 1 is a card containing 20 dark-colored buttons in five sizes ranging from 1½ inches to three fourths inch in diameter, composed of horn.

Exhibit 2 is a card containing small irregularly shaped glass buttons, highly colored and ornamental in character.

Exhibit 3 consists of five casein or galalith buttons, ranging in color from a light to a dark brown, 1 inch in diameter, resembling in size and color the buttons in Exhibit 1.

. Exhibit 4 consists of casein or galalith buttons, in different shapes, ranging from 1¼ inches to three fourths inch in diameter, white or cream colored, with irregular figures carved or molded on the surface.

Exhibit 5 consists of three hexagonal glass buttons, seven eighths inch wide, with brilliant figures of different colors on the convex surface thereof.

Exhibit 6 consists of small highly colored, irregularly shaped glass buttons in six sizes and shapes, each button having two or more brilliant colors.

Exhibit 7 consists of a number of cards of small, round, black, or white glass buttons with various-shaped figures on the surface thereof.

Exhibits 1, 3, and 4 are "sew-through" buttons and have two or more holes going entirely through the same for the purpose of attachment to textile surfaces. The arrangement for attaching Exhibits 2, 5, and 6 consists of a hole through the lower part of the button which hole runs transversely to its width and does not show from the top surface. All the items of Exhibit 7 are removable buttons and all have wire loops or shanks. They are fastened on by inserting a piece of wire or metal into the shank.

It appears from the record, although there is some conflict in the statements of the witnesses, that the buttons in Exhibit 1 are used for cloth coats for men and women; those in Exhibit 2 for silk dresses and, possibly, novelty effects; those in Exhibit 3 for men's coats and, at times, for ladies' topcoats; those in Exhibit 4 for very fine dresses and white coats and not on undergarments, overalls, or wash goods; and those in Exhibit 5 for ladies' silk dresses. Exhibit 6 consists of glass trimming buttons which are used on the outer parts of dresses for trimmings or ornamentation, and the buttons of Exhibit 7 are used for full-dress vests.

The importers introduced Illustrative Exhibits A, B, and E. The buttons in Illustrative Exhibit A are white, shiny, lustrous, agate buttons, glassy in appearance, used on cheap underwear, cheap dresses for children, cotton wrappers, and other cheap washable articles. Illustrative Exhibit B consists of shell or pearl buttons in two sizes, three fourths inch and one half inch "sew-through" in character, with four holes in each button; they have very little luster or ornamentation and are obviously a very cheap grade of pearl or shell button. Illustrative Exhibit E consists of small, metal-shanked, pearl buttons of different colors, probably of ocean pearl, and used for dress vests.

Illustrative Exhibits C and D were introduced by the Government. Illustrative Exhibit C consists of a two-hole "sew-through" pearl button, somewhat milky in color, three fourths inch in diameter, containing a slight ornamental depression around the holes. According to one witness, it has the appearance of a fresh-water pearl button. Illustrative Exhibit D consists of 11 cards of different styles, sizes, and shapes of buttons manufactured in this country, all of ocean pearl, and used, according to the testimony, "for almost every conceivable use as a button, both for women's wear, men's wear, under-wear, and top wear—for utilitarian purposes and for ornamental

purposes." Most of the buttons of Illustrative Exhibit D are "sew-through" buttons. A witness for the Government also stated that the cost of the buttons in Illustrative Exhibit D was higher, on the average, than the cost of the buttons represented by Exhibits 1 to 7 of the importation.

The witnesses are in agreement that in the button trade the terms "pearl" and "shell" are synonymous terms and that the pearl or shell button is made from either a fresh-water or an ocean shell.

The importers' witnesses' testimony does not refer to Illustrative Exhibits C or D, which are the better grade of pearl buttons, and which were introduced by the Government, but the various witnesses for the importers compare the imported buttons with Illustrative Exhibits A and B (agate and cheap pearl buttons, respectively) for the purpose of showing that the imported buttons are not "made in imitation of or similar to pearl, shell, or agate buttons." Importers' witnesses testified that the imported buttons are not and cannot be used for the same purposes as those in Illustrative Exhibits A and B, and that the value or cost of the imported buttons is from 10 to 20 times that of the agate buttons and much greater than that of the pearl or shell buttons.

One of the Government's witnesses testified that Illustrative Exhibit E (shanked, pearl vest buttons) was similar to Exhibit 7 (black and white shanked vest buttons), for the reason that Exhibit 7 imitated Illustrative Exhibit E, and that the buttons thereof were used on the same garments for the same purposes and that they were similar in color and shape. It is obvious that they are not similar in color or shape. They are similar in some of their uses, similar in size, and all are shanked buttons, but they are not similar in color or appearance.

The character of the testimony of one of the Government's witnesses, Leo H. Hirsch, is illustrated by the following:

Q. * * * Now, after looking at Exhibits 1 to 7, inclusive, and Illustrative Exhibits "A", "B", "C", "D", can you state whether or not by comparison between the exhibits and the illustrative exhibits, as to size, shape, pattern, and color, there is any imitation of or similarity to in respect thereto?

* * * * * * *

The WITNESS. Yes.

* * * * * * *

Q. In what way do you base your opinion by answering "yes"?—A. Because those buttons can all be imitated in pearl.

* * * * * * *

* * * A. I said pearl buttons could be made like that.

X Q. Pearl buttons could be made like merchandise like Exhibits 1 to 7?—A. Yes.

* * * * * * *

X Q. Have you ever made a pearl button to imitate or simulate a horn button?—A. Yes.

\*      \*      \*      \*      \*      \*      \*

X Q. Now, when did you manufacture a pearl button to imitate a glass button?—A. We never manufactured a pearl button specifically to imitate a glass button.

One witness referred to a process, of comparatively recent origin, known as the method of making a two-tone, colored pearl button, by which process various artificial colors and decorations may be given to pearl buttons. Some of the Government's witnesses testified to the effect that, in their opinion, the buttons represented by Illustrative Exhibit D, in their various shapes and colors, were similar to the imported buttons both in appearance and use.

Upon this record of conflicting testimony, and testimony given from different viewpoints and with reference to different exhibits, the trial court sustained the protests and held as follows:

> The issue turns on the pure question of fact as to whether, the buttons the classification of which is in controversy, composed of horn, glass, galalith, and casein are similar in quality, texture, and use to agate, pearl, and shell buttons.
>
> The plaintiffs showed by five competent tradesmen that they were in no way commercially similar. The Government witnesses did not establish the contrary, as their cross-examination clearly showed. Some of their testimony was to the effect that pearl buttons could be made like some of the imported goods which, as a commercial proposition, in which the tariff always speaks, was beside the issue. Those witnesses who claimed there was a similarity to agate, shell, and pearl buttons, did not altogether make that out on cross-examination.
>
> The overwhelming weight of the testimony is in favor of the plaintiffs' claim.

The Government challenges the decision and judgment of the court below on the ground that the court misstated the issue, in the above quotation, and arrived at the wrong conclusion with respect to what the pertinent evidence showed.

On account of the ambiguity in the words and expressions used by Congress in said paragraph 1510, it is deemed necessary and proper to interpret certain expressions therein used and to ascertain what Congress meant by the language used and this requires and permits a consideration of the legislative history of the provision under consideration and related paragraphs in the Tariff Act of 1922 as well as in the Tariff Act of 1930. *United States* v. *Union Pacific Railroad*, 91 U.S. 72, 79; *Holy Trinity Church* v. *United States*, 143 U.S. 457, 463; *United States* v. *Bacharach Industrial Instrument Co.*, 13 Ct. Cust. Appls. 262, 264, T.D. 41203.

The Tariff Act of 1922, in paragraph 1410, contained a provision for "buttons of pearl or shell, finished or partly finished, 1¾ cents per line per gross \* \* \* and \* \* \* 25 per centum ad valorem." It also, in paragraph 1411, provided for "Buttons commonly known as agate buttons, 15 per centum ad valorem" and for "buttons not specially provided for, 45 per centum ad valorem."

The Summary of Tariff Information, 1929, Volume 2, page 1926 et seq., gives the following information concerning different kinds of buttons:

### PEARL OR SHELL BUTTONS

*Description and uses.*—There are two kinds of pearl or shell buttons: (1) Those made from ocean pearl shells and (2) those made from fresh-water shells. The ocean shell buttons usually have more luster but otherwise the two kinds are similar. Fresh-water pearl buttons are, on the whole, a cheaper grade of buttons than those of ocean pearl.

\*       \*       \*       \*       \*       \*       \*

### AGATE BUTTONS

*Description and uses.*—Agate buttons are made of feldspar and clay and resemble porcelain. They are usually white and are used on underwear, boys' waists, barbers' coats, and infants', children's, and women's shoes. They compete in use with cheap bone and pearl buttons.

\*       \*       \*       \*       \*       \*       \*

### GLASS BUTTONS

*Description and uses.*—Glass buttons belong to a class known as "fancy" buttons. They are made from glass rods of "fusible enamel" in a great variety of shapes and colors, generally in the smaller sizes, and are used on women's wear largely for ornamental purposes.

\*       \* .       \*       \*       \*       \*       \*

### HORN BUTTONS

*Description and uses.*—Horn buttons are made from the hoofs and horns of cattle. They are usually made in medium to large sizes and are used on suits, cloaks, and overcoats.

The National Association of Button Manufacturers, in the hearings before the Committee on Ways and Means, House of Representatives, Seventieth Congress, second session (Tariff Readjustment, 1929, Vol. XIV, p. 7252), represented that they were not asking for any change of the rate of duty from that of the Tariff Act of 1922 on pearl or shell buttons, but urged that their industry was menaced by the importation of so-called "agate buttons" which took the place of pearl buttons. It suggested a paragraph substantially identical with the one now under consideration as being required to meet competitive conditions between the American pearl-button industry and foreign importations of agate buttons and buttons made in imitation of or similar to pearl or shell buttons. The material parts of the paragraph as suggested by the National Association of Button Manufacturers were in H.R. 2667 when introduced, and remained in it until it became the law now under consideration.

The highest duty in the Tariff Act of 1922 on buttons (1¾ cents per line per gross and 25 per centum ad valorem) applied to buttons of pearl or shell. A lower rate of duty (15 per centum ad valorem), in said act, applied to "buttons commonly known as agate buttons."

In the new act, Congress did not change the rate of duty applicable to buttons of pearl or shell, but made special provision in paragraph 1510 for "buttons commonly known as agate buttons, and buttons made in imitation of or similar to pearl, shell, or agate buttons" at 1½ cents per line per gross and 25 per centum ad valorem. It seems clear to us that Congress sought to further protect the pearl or shell-button industry by providing for a high duty on agate buttons (which were directly competitive with certain cheaper grades of pearl buttons) and other buttons which were made in imitation of or were similar to pearl buttons.

Having in mind the above purpose of the legislature, the question is presented: Do the imported buttons respond to the term "made in imitation of or similar to pearl, shell, or agate buttons?" As was hereinbefore pointed out, the testimony of the witnesses is not very helpful in determining this precise question. It certainly did not conclusively establish the contention of either of the parties hereto. Much must depend upon the exhibits before us. A consideration of the exhibits and the testimony prompts the conclusion that none of the imported buttons were either made in imitation of pearl or shell buttons or are "similar" to pearl or shell buttons within the meaning of the language found in the paragraph. We are convinced, as was the trial court, that this record establishes that the imported buttons are not made in imitation of or are similar to agate or pearl buttons. The Government, in its brief, states that it makes no claim that the imported buttons are in imitation of agate buttons.

The trial court said the issue was: Are the imported buttons "similar in quality, texture, and use, to agate, shell, or pearl buttons?" While similarity in quality, texture, and use might be important, it is hardly the test to be applied to the facts at bar. It is not necessary in order that the importation be regarded as similar to pearl, shell, or agate buttons, that they be similar in quality, texture, and use. Some of the imported merchandise is quite similar in use, broadly speaking, to some pearl buttons, and is wholly dissimilar in other material respects. Clearly the texture, as that term is ordinarily applied, cannot be said to be similar. The quality of an article is defined in the dictionaries as that characteristic which gives it rank, grade, character, or station. When used in that sense, it is difficult to determine from the exhibits and testimony whether the imported articles are similar in quality to certain high-grade pearl buttons. Probably there may be a certain degree of similarity in quality between the imported exhibits and certain grades of pearl buttons, but this fact, if it be a fact, is only one element entering into the consideration of the question.

The word "similar" is found in different parts of the tariff act and its meaning is not always the same. The trial court referred to

similarity in "quality, texture, *and* use." It has omitted the word "material" and has substituted the word "and" for the words "or the" in the term found in the similitude provision of the Tariff Act of 1930 (par. 1559). We can see little, if any, analogy between the term used in the similitude provision and the provision under consideration. In the similitude provision, classification is directed if there is a similarity in either material, quality, texture, *or* use. While both provisions are concerned with classification, the context of the terms differs materially and we think they were not used by Congress to accomplish the same result. We do think, however, that in determining what is similar to pearl, or shell, buttons, one of the most important considerations would be the question of use, because the injury which Congress sought to prevent lay in the use of the imported article.

The inquiry may be presented that since Congress has specially provided for the cheap agate button which came into direct competition with pearl buttons, to what other buttons might it have referred by the term "made in imitation of or similar to." This record does not purport to disclose full information as to the various kinds of buttons which may be made to imitate pearl buttons or which are similar to them. It is entirely probable that there are various kinds of bone or composition buttons which might fall within the meaning of the provision.

The test as to what is or is not similar merchandise for appraisement purposes, as provided for in section 402 of the Tariff Act of 1930, cannot be the same as the test in the case at bar. It is true that an element of similarity in the one instance may also be an element of similarity in the other, and yet an article similar for one purpose might be wholly dissimilar for another. *United States* v. *Thomas & Co. (Dehler-Signoret Corp.)*, 21 C.C.P.A. (Customs) 254, T.D. 46788.

Broadly speaking, there are, of course, a number of elements of similarity between the importation and pearl or agate buttons. All are intended for button purposes. Some of the imported buttons are similar in size or color to pearl or agate buttons. Some of the imported buttons, similar in size, may be used for buttoning purposes or for ornamental purposes on the same kind of garments as are pearl buttons. But, this is not a controlling consideration. A pearl button may be used on a lady's coat and a transparent glass button of the same size and shape may be used on the same kind of coat, both for buttoning purposes and for ornamental purposes, and yet they are not similar within the meaning of the particular tariff provision under consideration.

That the imported buttons are not *made in imitation of* pearl, shell, or agate buttons clearly appears from an examination of the exhibits

508

and a consideration of the testimony. The term "made in imitation of" would seem to imply an intentional simulation. *Robbins* v. *Robertson*, 33 Fed. 709. If there has been any imitating shown in the record before us (see quoted testimony, *supra*), it would seem that the pearl-button manufacturer may have imitated certain desired qualities and effects which are found in other kinds of buttons.

While it would be very difficult to lay down a hard and fast definition of the word "similar" as used by Congress in the involved provision, and we do not intend to do so in this opinion, nevertheless we think that an imported button ordinarily should be regarded as similar to pearl or agate buttons, within the meaning of this paragraph, if the imported button so resembled the pearl or agate button that one could be easily substituted for the other in a commercial way. Color, shape, appearance, value, use, and probably many other things might be of importance in the consideration of this question. It may be urged that under the foregoing statement any button a garment manufacturer places upon a garment other than a pearl or agate button is a substitution of one for the other, and that in such cases the buttons should be regarded as similar. It is clear to us that Congress had something more definite in mind than the thought thus expressed. It did not seek to impose the higher duty upon all imported buttons which could be used on garments because all buttons could be used on garments, but it sought to impose the higher duty on such buttons as could be substituted for the particular purpose or use to which pearl or agate buttons were specially fitted and used.

We conclude, therefore, that the merchandise involved in this suit is not provided for in the first part of paragraph 1510, *supra*, but is dutiable under the provision for "and buttons not specially provided for, 45 per centum ad valorem", contained therein, and the judgment of the United States Customs Court is *affirmed*.

HATFIELD and LENROOT, Judges, concur in the conclusion.