(C. D. 366)

GEO. S. BUSH & CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided July 11, 1940)

*Lawrence & Tuttle* (*George R. Tuttle* and *Charles F. Lawrence* of counsel) for the plaintiff.

*Webster J. Oliver*, Assistant Attorney General (*Richard F. Weeks*, special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: This is a suit against the United States, arising at the port of Seattle, brought to recover certain customs duties

alleged to have been improperly exacted on a particular importation described on the invoice as "One Dobbie-McInnes Farnboro electric indicator equipment 'A', No. 297." Duty was levied thereon at the rate of $4.50 plus 65 per centum ad valorem under the provisions of paragraph 368 (a) (1) and (2) of the Tariff Act of 1930, the pertinent portions of which read as follows:

PAR. 368. (a) Clocks, clock movements, including lever movements, clock-work mechanisms, time-keeping, time-measuring, or time-indicating mechanisms, devices, and instruments * * * and any mechanism, device, or instrument intended or suitable for measuring time, distance, speed, or fares, or the flowage of water, gas, or electricity, or similar uses, or for regulating, indicating, or con-trolling the speed of arbors, drums, disks, or similar uses, or for recording or indicating time, or for recording, indicating, or performing any operation or function at a predetermined time or times, all the above (except the articles enumerated or described in paragraph 367), whether or not in cases, containers, or housings:

(1) If valued * * * at more than $10 each, $4.50 each;
(2) any of the foregoing shall be subject to an additional duty of 65 per centum ad valorem;

It is claimed that said articles are properly dutiable at the rate of 35 per centum ad valorem under paragraph 353 of said act as articles having as an essential feature an electrical element or device, or, alternatively, at the rate of 45 per centum ad valorem under para-graph 397 of said act as a manufacture of metal not specially provided for, or at the rate of 40 per centum ad valorem under paragraph 360 of said act as a scientific instrument, which latter rate was reduced to 20 per centum ad valorem by virtue of the trade agreement entered into by the United States with the Republic of Switzerland, pro-mulgated in T. D. 48093.

At the hearing held at Seattle, Wash., on November 13, 1939, the plaintiff offered in evidence a catalog of the Dobbie-McInnes-Clyde, Ltd., the manufacturer of the imported device, which was admitted in evidence as Exhibit 1.

It was stipulated and agreed by and between counsel for the re-spective parties in open court that the device in question was com-posed in chief value of a base metal not plated with gold, silver, or platinum. No other evidence was offered by the plaintiff and none was offered by the Government.

On page 4 of Exhibit 1 there appears a pictorial representation of the so-called "Farnboro" electric indicator, and beginning on the same page and continuing on page 5 occurs the following description of said indicator:

### GENERAL DESCRIPTION.

METHOD OF INDICATING.—In The "Farnboro" Indicator the method adopted, which is entirely new, is that of recording the time at which a certain cylinder pressure balances a standard air pressure. There will, in general, be two such

balance points per cycle, one when the cylinder pressure is increasing and the other when it is falling. By gradually increasing the air pressure a set of time records is obtained covering the whole range of cylinder pressures although each pair of records belongs to a different cycle. The time interval between the two balance points of the cycle will decrease as the peak of the diagram is approached.

The balance point is indicated by the movement of a light Valve Disc subjected on one side to the cylinder pressure and on the other side to the gradually increasing air pressure. The movement of the Disc breaks the primary current of an electric circuit of which the Valve forms part. In this circuit a high-tension induction coil is arranged and at the moment of breaking the primary circuit, a high-tension voltage is induced in the secondary circuit which, in its path to earth, must jump an air-gap in the form of a spark. This spark, then, is used for recording the moment of breaking the primary circuit and therefore the time at which the balance point is obtained.

The record or diagram is obtained by rotating a sheet of paper at engine speed or one-half engine speed in the air-gap such that the spark in going to earth must perforate this paper.

INDICATING UNIT.—The indicating mechanism is a pressure controlled contact breaker and its operation is not affected by changes of temperature in the cylinder. It consists essentially of the light Valve Disc already referred to guided centrally by a spindle which is insulated from the remainder of the Unit. This Valve Disc is allowed a small amount of freedom (less than .010 in.) between two flat seats both of which form the earth of the electric circuit. One side of the Valve communicates with the combustion chamber of the engine and the other side of the Valve is connected through a suitable pipe line to a source of high-pressure air. It is made in three standard types (drawings on application) to suit special engine designs.

NEW TYPE A is fitted with a short water-cooled cock and a fixed central electrode insulated with mica. This type is recommended since the Valve Disc is cooled and is entirely cut off from the engine cylinder gases by the cock when the Indicator is not in use. Also the electrode and its guide are made in one piece which minimises chances of air leakage and ensures proper alignment and added strength. * * *

\* \* \* \* \* \* \*

RECORDING MECHANISM.—This consists essentially of a piston and cylinder unit of which the cylinder is connected to the same source of high-pressure air as the Indicating Unit or Disc Valve and the movement of the piston is constrained by springs. The piston is connected to a multiplying parallel link motion, the extremity of the main link carrying the sparking point to which the secondary current is conducted; this point moves parallel to and a small distance from the surface of a drum driven positively from the engine at crankshaft or one-half crankshaft speed.

If, then, paper is put on the drum, the drum rotated and the standard pressure gradually increased, sparking will occur between the spark point and the surface of the drum through the paper. But as the piston is always subjected to the same standard pressure as the Disc Valve, the distance, at any instant, of the sparking point along the drum from some known datum line represents the cylinder pressure at that instant. Also, the drum will at the same instant be in a definite position relative to one of the dead centres (previously marked on the drum) so that the perforation will represent with reference to the two datum lines the pressure in the cylinder and the angle of the crank at which that pressure occurs. Consequently the series of perforations obtained by increasing the standard

pressure from atmospheric to the maximum obtaining in the engine cylinder will represent the cyclic change of pressure in the cylinder with reference to crank angles, i. e., with reference to time.

From a careful reading of Exhibit 1 we are convinced that the device at bar does not perform any of the functions enumerated in said paragraph 368(a). In our opinion the apparatus in question is in many respects similar to the indicators which were passed upon by the Court of Customs and Patent Appeals in the case of *United States* v. *Bacharach Industrial Instrument Co.*, 13 Ct. Cust. Appls. 262, T. D. 41203.

In holding that such indicators were not within the scope of paragraph 368 of the Tariff Act of 1922, the appellate court said:

The indicators in question are articles of mechanism, made of base metal, and are used for two principal purposes, first, to determine the mean effective pressure which an engine produces or which a pump consumes during one revolution; second, to test the correctness of the setting of the valves in an engine, to ascertain whether the valves are large enough, to determine, in the case of gas engines, whether the spark is set correctly and to determine whether the pistons are tight or leaky. The device consists principally of a cylinder and an attached movable drum. The cylinder is attached to the cylinder of the engine to be tested by means of a connection having a cock therein. To use the instrument the cock is opened and pressure admitted from the engine cylinder into the base of the indicator cylinder. This causes a piston in the cylinder, regulated by a reciprocating spring, to rise or fall as the pressure is increased or diminished. This small piston, in thus rising and falling, motivates a lever having a pencil affixed to its end. This pencil, in turn, travels over the surface of a sheet of paper or card attached to the surface of the drum, which drum, in turn, is oscillated back and forth by means of a string, one end of which is attached to the cross-head of the engine and one end to the drum. In this way a curve is traced upon the card which graphically depicts the pressure at all times during a complete revolution of the engine. * * * The major use of these devices is for the testing of valves.

An inspection of paragraph 368 leads to the conclusion that this paragraph was intended to cover clocks and similar mechanisms. It is the successor to paragraph 161 of the tariff act of October 3, 1913, which related entirely to clocks, watches, and parts thereof. The Congress, however, in arranging said paragraph 368, inserted in this clock paragraph the following new language:

and any device or mechanism having an essential operating feature intended for measuring time, distance, or fares, or the flowage of water, gas, electricity, or similar uses, or for regulating or controlling the speed of arbors, drums, disks, or similar uses, or for recording, indicating, or performing any operation or function at a predetermined time or times.

This language seems naturally to divide itself into three general classes of mechanical devices—first, devices such as meters for measuring the quantity of certain specified things; second, devices such as those controlling the rotation of phonograph disks, for the control of the speed of certain specified things; and, third, devices such as alarm clocks, to perform some function at a predetermined time.

The indicator in the case at bar, in our opinion, does not fall within any of these classes. It does not measure the quantity of anything; it does not regulate or control anything; it is true that it supplies data by which the operator may be

better enabled to regulate his engine, but in itself it regulates or controls nothing; it does not perform any function at some time which has been determined in advance; it operates only when the operator turns a cock and admits pressure into its cylinder. It is, therefore, not a device which will automatically function at a certain appointed time, but will never function without manipulation.

Our conclusion is that Congress did not intend to include the indicators in question within the scope of paragraph 368. They are devices much like pressure gauges, thermometers, and other similar accessories, which aid the operator of a machine to secure efficiency and safety of its operation. But they are not the devices mentioned *eo nomine* in the paragraph, nor are they *similar thereto*, for to be thus similar they must have a use substantially as the devices specifically named in the paragraph. This, we have seen, they do not have. * * *

In view of the description of the so-called "Farnboro" Electric Indicator set forth in Exhibit 1, combined with the statement on page 6 of said exhibit that—

The "Farnboro" Indicator has been extensively used for testing New Engine Designs and for Research Purposes * * * and has afforded considerable light upon the altitude effect of aero-engines in flight. The efficiency of induction, exhaust and fuel injection systems, supercharging nozzles, pre-ignition, detonation and turbulence factors, valve timing, cylinder cooling, compression variations, etc., are all within its scope.

we are convinced that the indicator in question was not intended to be included within the scope of paragraph 368 of the Tariff Act of 1930. That being the case, and since the evidence is conclusive that the indicator is an article having as essential features several electrical elements or devices, we are satisfied that the mechanism is properly dutiable at the rate of 35 per centum ad valorem under paragraph 353 of the Tariff Act of 1930, as alleged by the plaintiff. That claim is therefore sustained; but as to all other merchandise the claims are overruled. Judgment will be rendered accordingly.