(C.D. 2140)

JOHN B. HEWETT CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided December 15, 1959)

*Jordan & Klingaman* (*Jacob L. Klingaman* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Henry J. O'Neill* and *Margaret M. Vallerie*, trial attorneys), for the defendant.

LAWRENCE, Judge: Five importations of B.T.U. meters (B.T.U. signifying British Thermal Units) covered by one protest were classified for tariff purposes as "Instruments suitable for measuring flowage of liquids" in paragraph 368(a) of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 368(a)), as modified by the supplementary trade agreement with Switzerland, 90 Treas. Dec. 174, T.D. 53832, and subjected to duty at the rate of $2.25 each and 35 per centum ad valorem.

It is the contention of plaintiff herein that the articles in controversy should properly have been classified as machines, not specially provided for, or parts thereof, in paragraph 372 of said act (19 U.S.C. § 1001, par. 372), as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, and dutiable at the rate of 13 per centum or 12 per centum ad valorem, or as articles not specially provided for, wholly or in chief value of base metal, in paragraph 397 of said act (19 U.S.C. § 1001, par. 397), as modified by the sixth protocol, *supra*, which provides a rate of duty of 21 per centum or 20 per centum ad valorem, depending upon the date of entry for consumption.

For ready reference, the pertinent text of the statutes is here set forth:

Paragraph 368(a), as modified, *supra*:

\* \* \* any mechanism, device, or instrument intended or suitable for measuring distance, speed, or fares, or the flowage of water, gas, or electricity, or similar uses \* \* \*

    Mechanisms, devices, or instruments intended or suitable for measuring the flowage of electricity \* \* \*

    \*      \*      \*      \*      \*      \*      \*

    Other \* \* \*——

    \*      \*      \*      \*      \*      \*      \*

    Over $10_____$2.25 each and 35% ad val.

Paragraph 372, as modified, *supra*:

| Description of Products | A [Effective 6/30/56] | B [Effective 6/30/57] |
|---|---|---|
| Machines, finished or unfinished, not specially provided for: | | |
|     Adding machines \* \* \* | | |
|     \*    \*    \* | | |
|     Other \* \* \*_____ | 13% ad val. | 12% ad val. |
| Parts, not specially provided for, wholly or in chief value of metal or porcelain, of any article provided for in any item 372 in this part. | The rate for the article of which they are parts. | The rate for the article of which they are parts. |

Paragraph 397, as modified, *supra*:

| Description of Products | A<br>[Effective 6/30/56] | | B<br>[Effective 6/30/57] | |
|---|---|---|---|---|
| Articles or wares not specially provided for, whether partly or wholly manufactured:<br> * * * * | * | | * | * |
| Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal * * *:<br> * * * | * | * | * | * |
| Not wholly or in chief value of tin or tin plate:<br> Carriages, drays, trucks, * * *<br> * * * | * | * | * | * |
| Other * * * | 21% ad val. | | 20% ad val. | |

Two witnesses were called to testify at the hearing of this case—one for the plaintiff and the other on behalf of defendant.

Plaintiff's witness, Kenneth Davidson, stated that he had been associated with John B. Hewett Co., Inc., plaintiff herein, for 5 years and was in charge of the B.T.U. meter program, preparing layout drawings of the meters and passing upon their installation. Prior thereto, he had 9 years' experience in connection with heavy piping, metering, and B.T.U. meters.

A sample of the smallest size B.T.U. meter was received in evidence as plaintiff's exhibit 1. Davidson explained that B.T.U. meters are installed in a heating system or in a cooling system and that the meter gives the total amount of heat consumed which is registered on a dial in B.T.U.'s. A B.T.U. or British Thermal Unit is the amount of heat required to raise 1 pound of water 1 degree Fahrenheit.

Davidson agreed that the following statement summarizes the composition of a B.T.U. unit such as plaintiff's exhibit 1—

* * * The b.t.u. meter consists of a flow meter, an integrating mechanism mounted on the liquid or flow meter, and two temperature-sensitive bulbs filled with mercury which are inserted into the supply and return pipe or into the cold and hot water lines. The integrator includes two six-digit counters, one of which indicates the total heat supplied in b.t.u.'s, the second counter records total gallons passed through the meter. A pointer above the counter indicates the temperature differences in degrees Fahrenheit of the supply and return liquid.

A diagram or plan showing where such meters are inserted into a heating or cooling system was received in evidence as plaintiff's exhibit 2 and a folder, depicting a B.T.U. meter installed, a picture of the inside of the instrument, a cross-section of the integrating mechanism, and a simplified schematic drawing of the interior of a meter when it is in action, was received in evidence as plaintiff's illustrative

exhibit 3, its admission being limited to the pictorial and diagrammatic representations.

It was the testimony of witness Davidson that the heating or cooling system with which a B.T.U. meter is used is a closed system and the quantity of water therein contained is known. As soon as there is a flow of water, the water moves through the liquid portion of the B.T.U. meter causing the rotation of the shaft which produces the power to operate the integrator. The rotation of the shaft and the operation of a gear train convert the flow of gallons of water into weight of water.

There are two bulbs that go into the pipeline of the system, one into the supply line and the other into the return line. Said bulbs are mercury-filled tubes with a very fine opening in them. The temperature of the water pressing against the mercury gives the difference between the supply line and the return line. With the known factors of weight of water and temperature difference in a heating or cooling system, the formula of weight times temperature difference is applied in order to arrive at the number of B.T.U.'s used.

Referring to page one of illustrative exhibit 3, Davidson stated that the meter dials register gallons, B.T.U.'s, and temperature difference. The temperature difference dial indicates at any given time what the temperature of the water is between the supply and the return lines of a pipeline. The indication of temperature difference is a safety measure as a check on the proper operation of the device. Likewise, he added, the gallon dial is a safety factor to check the meter's operation. The B.T.U. dial is the one that gives the necessary information for billing purposes.

Although the witness, in his testimony, seemed to stress the fact that the flowage of gallons of water as such through the meter was of little or no importance to the function and purpose of a B.T.U. meter, on being questioned by the bench, he answered as follows—

JUDGE LAWRENCE: You say the liquid meter, then, does regulate or measure the flow to a certain extent, does it?

THE WITNESS: To a certain extent it measures the flow. You are talking about the basic liquid portion—to a certain extent it does. And we have to know what the flow is. However, we lose that immediately upon transmission of the shaft to our gear train where we turn it to weight.

*       *       *       *       *       *       *

JUDGE FORD: A part of the machine measures the actual flow of the water?

THE WITNESS: The red portion, the liquid portion. * * * It's an expensive way to meter water, gallon-wise, because it's so much more expensive than a water meter.

JUDGE LAWRENCE: What do you say, then, is the primary purpose of this particular meter, Exhibit 1?

THE WITNESS: To accurately measure the weight of water, even though we start off with flow.

Witness Davidson distinguished B.T.U. meters from meters that measure the flowage of water by the fact that the primary function of the latter is to give the number of gallons whereas, in the case of the B.T.U. meter, gallon consumption is not important but rather its weight and the temperature difference between the supply and return line which affect the B.T.U.'s.

It was stipulated and agreed by adversary counsel that the B.T.U. meters in issue are composed wholly or in chief value of base metal, not plated with gold, silver, or platinum, and not colored with gold lacquer.

J. E. Hewson, New York regional manager of the Foxboro Co., manufacturer and seller of industrial instruments, including gas and electric meters, and a graduate chemical engineer, when called to testify on behalf of defendant stated that a determination of B.T.U.'s with a meter such as plaintiff's exhibit 1 necessitates a measurement of water flow. In the case of B.T.U. meters, the primary measurement is volume flow "because the rotation of the meter element is proportional to volume rate changes." That factor is then converted to weight by the mechanism contained in the unit.

Summarizing briefly the testimonial record with relation to the operation of a B.T.U. meter, it appears that a closed heating or cooling system with which a B.T.U. meter is used contains a known quantity of water. When such system is in operation, the volume of water begins to flow, passes through a liquid flow meter in the lower part of the device, and, by mechanical means, is converted into weight of water. With the use of two temperature sensitive bulbs filled with mercury inserted into the supply and return pipes, the temperature difference in said lines is determined. From the known factors of weight of water and temperature difference, the meter indicates the B.T.U.'s or quantity of heat energy utilized by the heating or cooling system. In the course of the above-outlined meter operation, indication is given on dials of gallons of water flowing through the liquid flow meter, temperature differences between the supply and return lines of a pipeline, and B.T.U.'s utilized in the operation.

From the foregoing, it appears that whereas the end result sought by the use of the meters in issue is to obtain a B.T.U. reading, nevertheless, in arriving at such result a measurement of the flowage of water takes place in the liquid flow meter of the device as a necessary step in its proper operation.

The case of *United States* v. *Cambridge Instrument Co.*, 21 C.C.P.A. (Customs) 508, T.D. 46970, is principally relied upon by plaintiff herein to controvert the classification of the collector of customs. The following statement appears in plaintiff's brief—

* * * The case of *United States* v. *Cambridge Instrument Co.*, 21 C.C.P.A. (Customs) 508, is probably the most helpful adjudication along this line. Under

that ruling the fact that one part of the instrument now before the court may be similar to, or even identical with, a part of a water meter does not help defendant under the present tariff act. This case also is authority for holding that the purpose for which the B.T.U. Meters are used is not similar to the enumerated uses. Accelerometers, which determined acceleration, were held not to be within paragraph 368.

A reference to the *Cambridge* case, *supra*, discloses that the articles there before the court consisted of accelerometers, some of which were imported under the Tariff Act of 1922 and others under the Tariff Act of 1930. The former accelerometers were used by engineers to determine vertical or horizontal acceleration of any moving body to which they were attached and to determine vibrations of any moving body. The latter were rotary accelerometers used for determining rotational accelerations and vibrations, such as the acceleration or vibration of a motor or engine. Both classes of accelerometers operated upon the same principle, and, for dutiable purposes, there was no distinction between them.

An accelerometer was described as containing a weight set in a spring. The weight is attached to a stylus which moves up and down when the weight is moved. The stylus presses against a celluloid ribbon. The ribbon can be moved forward by a spring motor and when so moved the stylus will record on the celluloid ribbon the movements of the weight. The movement of the ribbon actuated by the spring motor is simply an accessory recording device. It has nothing whatever to do with the operation of the accelerometer in detecting acceleration or vibration.

It was held by the appellate court in the *Cambridge* case that the accelerometers imported during the life of the Tariff Act of 1930 were not such instruments or devices as were provided for in paragraph 368, whereas the accelerometers imported during the applicable period of the Tariff Act of 1922 were within the purview of the prototype paragraph 368 of that act, by virtue of additional language contained there which is indicated in the following quotation by italics—"any device or mechanism *having an essential operating feature* intended for * * * regulating or controlling the speed of arbors, drums, disks * * *." It was found by the court that while there was an operating feature of the devices that controlled or regulated the speed of drums which were themselves a part of the devices, the accelerometers, as a whole, were not suitable for such purposes.

The appellate court not only found that the accelerometers in the *Cambridge* case were not devices suitable for regulating the speed of arbors, drums, or disks, but also that they were not devices for similar uses.

In the course of the trial of the instant case, Government counsel stated—

For the purpose of the record I would like to make clear that it's the Government's position although the classification seemed to put it on the basis of device for measuring the flowage of water, it's the Government's position that it is within the provisions of 368, which reads device, instrument, or mechanism suitable for measuring the flowage of electricity, gas, or water, or similar uses. We say and contend that this device, if it doesn't measure the flowage of water within the true meaning of paragraph 368, that it is similar in use to those specified meters.

As to what constitutes "similar uses," as that term is applied to paragraph 368 of the Tariff Act of 1930, with which we are here concerned, reference is made to the case of *United States* v. *Bacharach Industrial Instrument Co.*, 13 Ct. Cust. Appls. 262, T.D. 41203, where, in the course of holding that indicators for determining the pressure in steam and gas engines and air compressors were not within the purview of the prototype paragraph 368 of the Tariff Act of 1922, our appellate court declared that for articles to be of "similar uses" "they must have a use substantially as the devices specifically named in the paragraph."

Even were it found that the instant B.T.U. meters, as a whole, are not mechanisms, devices, or instruments intended or suitable for measuring the flowage of water, it is our view that the meters presently before the court are measuring devices having a similar use to the items denominated in paragraph 368, *supra*. Whereas the record discloses that the primary purpose of the involved meters is to provide a reading in B.T.U.'s of energy used in a heating or refrigerating system and that the user is not interested in the volume of water as such which passes through the meter, it, nevertheless, is a fact that in order for the device to supply the desired reading in B.T.U.'s the volume of water passing through the meter is an essential factor in arriving at such reading.

Moreover, we believe that an analogy exists among an electric meter which measures the watt hours of energy used, a gas meter which registers the consumption of energy in cubic measurement, and the meters in issue which record in British thermal units the heat energy required to operate a heating or refrigerating system. Each is a device for measuring the consumption of energy. It is our opinion, therefore, that the instant B.T.U. meters are in fact and in law devices for a "similar" use to those specifically named in paragraph 368(a) of the Tariff Act of 1930, as modified, *supra*.

Upon due consideration of the record before us, we hold that the B.T.U. meters in controversy come within the purview of the provisions of paragraph 368(a), as modified, *supra*, for "* * * any mechanism, device, or instrument intended or suitable for measuring * * * the flowage of water, gas, or electricity, or similar uses * * *." The claims in the protest are, accordingly, overruled.

Judgment will issue in accordance with the views above expressed.