UNITED STATES v. G. L. ELECTRONICS, INC., ARROW SALES, INC.

(No. 5085)*

United States Court of Customs and Patent Appeals, June 8, 1962

*William H. Orrick, Jr.*, Assistant Attorney General (*Richard E. FitzGibbon*, Chief, Customs Section, of counsel) for the United States.

*Stein and Shostak* (*Marjorie M. Shostak* and *S. Richard Shostak*, of counsel) for appellees.

[Oral argument April 5, 1962, by Mr. FitzGibbon and Mr. Shostak]

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK[1]

RICH, Judge, delivered the opinion of the court:

This appeal is from the judgment of the United States Customs Court, Second Division (Abstract 65768), sustaining protests in two cases which were consolidated for trial. The protesting parties are

*C.A.D. 804.

[1] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell*, pursuant to provisions of Section 294(d), Title 28, United States Code.

interrelated. A single witness testified; he is president of G. L. Electronics, Inc., and secretary of Arrow Sales, Inc. The former imported an electrical instrument referred to as a "Toho tester," a small or pocket type of volt-ohm-milliampere meter, and the latter imported a small 0–1 milliammeter, referred to as "M0/38 type."

In his "Report of Collector on Protest" in each of these cases, the collector stated that he had classified each of these meters in paragraph 368(a) (1) (2), as modified by T.D. 48093, "as instruments suitable for measuring electrical energy." Appellees' claim in each case, sustained below, was that these meters are not properly classified in paragraph 368 but in paragraph 353, Tariff Act of 1930, as modified by T.D. 52739. The pertinent parts of these modified paragraphs are [emphasis ours]:

Par. 368(a)

* * * mechanisms, devices, or instruments intended or suitable *for measuring the flowage of electricity;* time switches; all the foregoing which are provided for in paragraph 368 whether or not in cases, containers, or housings:

 (1) If valued at not more than $1.10 each_____ 27½¢ each
 *    *    *    *    *    *    *
    Valued at more than $2.25 but not more than $5 each_____ 75¢ each
 *    *    *    *    *    *    *
 (2) Any of the foregoing shall be subject to an additional
    duty of_____ 32½% ad val.

Par. 353

Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

 *    *    *    *    *    *    *
  Other (except * * *)_____ 13¾% ad val.

It is not disputed that paragraph 353 covers the meters since they have as an essential feature an electrical element and it was stipulated that they are in chief value of metal. The Government's contention is, apparently, that these meters are specially provided for in paragraph 368 because they measure "the flowage of electricity." It is asserted that this is a question of fact but as the issue shapes up it turns out to be, in our opinion, a question of law. The reason for this is that resolution of the issue turns on what Congress intended, when it wrote paragraph 368, to include by the expression (first used in the Tariff Act of 1922, par. 368) "measuring the flowage of electricity," a question, not of fact, but of statutory construction. As the Government brief points out, the facts themselves are not in dispute in this case, but rather the conclusions to be drawn from them.

A great amount of discussion can be avoided if we start from the entirely justifiable assumption, supported by the record, that both of the meters at bar are capable of measuring *amperage.* The milliam-

meter obviously is, up to one thousandth of an ampere. The witness for the importer stated that the Toho meter can also be used to determine amperage. The face plate of the meter itself confirms this by indicating that the meter is designed to measure "A.C. Volts D.C. Volts—Milliamps." We can further assume that to measure amperage is to measure the *rate* of flow of an electric current and that, in that sense at least, an ammeter measures "flow." Fundamentally, the Government predicates its case on these facts, though it makes additional arguments which are scientifically unsound.[2]

There is, however, another sense in which flow or flowage of electricity is measured and that is in terms of power consumed. We quote from the testimony:

Q. Based on your experience in this field, how is electric power measured?
A. Electric power is measured with a device called a watt-hour meter. It consists of clock works and a hysteresis motor, which through a gear-train on the clock works, causes hands to move around numerous dials.
Q. Now a watt-hour meter; is that the meter in our homes to measure for the electric company, is that it?
A. Yes, sir.

    *       *       *       *       *       *       *

Q. Mr. Lichterman [the witness], based on your experience in the field and in your opinion, does Plaintiff's Collective Exhibit #1 [Toho meter] measure the flowage of electricity?
A. No.
Q. What is used to measure the flowage of electricity?
Mr. Weil [for the Gov't.]: I object to it. It has already been answered three times. He said [a] watt-hour meter is used to measure electricity.
Judge Donlon: (To the witness) You may answer that question.
A. A watt-hour meter.

As to the MO/38 milliammeter, the witness testified that it had, as is obvious, nothing to do with the measurement of wattage.

On the basis of this record and after considering some of its own prior decisions involving various kinds of electrical measuring instruments, the lower court concluded as follows:

* * * we find and hold that the subject merchandise is not intended or suitable for measuring the flowage of electricity within the meaning of paragraph 368 of the Tariff Act of 1930, as modified, *supra*, but consists of articles having as an essential feature an electrical element within the meaning of paragraph 353 of said act, as modified, *supra* * * *.

---

[2] For example, the brief for the United States says, "Clearly if pressure is created by electricity, the electricity is flowing and an instrument which measures that pressure in terms of volts or voltage is measuring the flowage of electricity." This has validity only to the extent of the current permitted to flow through the meter to actuate its movement, which is negligible in comparison with the "flowage" the brief evidently assumes would exist. Again, in stating "The Issue," the brief says "the conclusion is inescapable that the articles are indeed used to measure the flowage of electricity in terms of volts and amperes." Current flow is not measured in volts, according to our understanding of the fundamentals of electrical theory. As the witness testified, voltage is the measure of pressure, or potential difference. It can exist without flow of current.

We think the Customs Court reached the right conclusion. The Government argues that any instrument that measures amperage necessarily measures flowage of electricity on the basis that current flow is measured in amperes. This is a plausible argument. But there is more to the situation from the standpoint of statutory construction than appears from the language of the modified form of paragraph 368(a) above set forth.

This court had occasion to examine the statutory language in a more general way in the case of *United States* v. *Bacharach Industrial Instrument Co.*, 13 Ct. Cust. Appls. 262, T.D. 41203, where it had before it the predecessor paragraph 368 of the Tariff Act of 1922. It was there said (pp. 263–264) :

> An inspection of paragraph 368 leads to the conclusion that this paragraph was intended to cover clocks and similar mechanisms. It is the successor to paragraph 161 of the tariff act of October 3, 1913, which related entirely to clocks, watches, and parts thereof. The Congress, however, in arranging said paragraph 368, inserted in this clock paragraph the following new language:
>
> > and any device or mechanism having an essential operating feature intended for measuring time, distance, or fares, or the flowage of water, gas, electricity, or similar uses, or for regulating or controlling the speed of arbors, drums, disks, or similar uses, or for recording, indicating, or performing any operation or function at a predetermined time or times.
>
> This language seems naturally to divide itself into three general classes of mechanical devices—first, devices such as meters for *measuring the quantity* of certain specified things; second, devices such as those controlling the rotation of phonograph disks, for the control of the speed of certain specified things; and, third, devices such as alarm clocks, to perform some function at a predetermined time. [Emphasis ours.]

It will be observed that, in its origin, the clause referring to flowage of electricity did not stand by itself but was classed with devices for measuring other things in the expression "measuring * * * the flowage of water, gas, electricity," which the court said referred to "devices such as meters for measuring the *quantity* of certain specified things" (our emphasis), namely the quantity of water, quantity of gas, quantity of electricity. This kind of quantitative measurement is not done by an ammeter, which measures only *rate* of current flow, and certainly not by a voltmeter which measures potential difference or electrical "pressure" or an ohmmeter which measures resistance. The instrument before the court in the *Bacharach* case was a mean effective pressure gauge for engines and pumps, used for testing valve and ignition settings and the like, and was held not to be included in paragraph 368, either eo nomine or as similar to the devices named therein. After some consideration of the legislative history of the paragraph, the court said, "The manifest intent was to write a paragraph to protect the clock and clock mechanism industry."

One of the outstanding differences between an ammeter, voltmeter, or ohmmeter and a watt-hour meter is that the latter, as the witness said, contains clockwork, or at least a similar mechanism in the form of a gear train which operates the dials upon which the total number of kilowatt hours of electric power consumed is accumulated. There is therefore reason to include it in paragraph 368, which this court characterized as "the clock and clock movement paragraph" in *C. J. Tagliabue Mfg. Co.* v. *United States*, 21 CCPA 221, T.D. 46751. The court there held that $CO_2$ measuring and recording mechanisms containing clockwork for moving the recording chart were within that part of paragraph 368 of the 1922 act providing for recording and indicating mechanisms. This court said in *United States* v. *R. W. Cramer & Co.*, 21 CCPA 379, T.D. 46911, that paragraph 368 was "not confined exclusively to clocks and clockwork mechanisms" and there held electromagnetic recording devices having ratchet controlled paper spools but no clockwork to be within the clause (original emphasis), "*any* device or mechanism having an essential operating feature * * * for regulating or controlling the speed of arbors, drums, disks, *or similar uses*." That clause has no applicability to meters such as those at bar.

We come now to the transition from the 1922 to the 1930 Act, in which Congress reenacted the clause in question. Paragraph 368 of the 1922 Act was discussed, in part, in the *Summary of Tariff Information, 1929, on Tariff Act of 1922, Schedule 3, Metals and Manufactures of*, at pages 792–795, as follows:

### CLOCKWORK MECHANISMS

Description and uses.—Outstanding among the clockwork mechanisms provided for in paragraph 368, of the act of 1922, are taximeters, water meters, gas meters, electric meters, timers or "stop watches," and other similar instruments.

\*　　\*　　\*　　\*　　\*　　\*　　\*

### DECISIONS

Paragraph 368, it has been held, was intended for the protection of manufacturers of clocks and clock-work mechanisms. It does not include instruments which do not automatically perform their function but depend for such performance upon the manipulation of the operator. Accordingly, *indicators for determining* the *pressure* in steam and gas engines or air compressors were held not to be within the paragraph * * * (13 Ct. Cust. Appls. 262). [Emphasis in Summary.]

Also considered by the House Ways and Means Committee was the *Memorandum of Court Decisions Affecting Tariff Act of 1922* (1929) wherein it was stated, p. 21:

In *United States* v. *Bacharach Industrial Instrument Co.*, 13 Ct. Cust. Appls. 262, the court held that indicators for determining the pressure in steam and gas engines and air compressors, are not dutiable under the provision for a device or mechanism having an essential operating feature intended for measuring the

flowage of water, gas, electricity or steam, under paragraph 368, but were dutiable as manufactures of metal under paragraph 399.

\* \* \* \* \* \* \*

If these decisions are believed not to conform to the Congressional intent, the provisions of paragraph 368 should be amended.

We deem these matters of legislative history to have significance as showing an adoption of the construction of paragraph 368 which excludes therefrom a meter or gauge which merely gives information about a transient condition such as pressure, voltage, or amperage, as distinguished from the kind of quantity-measuring meter in which information on through-put or "flowage" is accumulated and which is typified by the three measuring devices specified, which are to be found in practically every urban and suburban and many rural dwellings, namely, the gas, water, and electric consumption meters, all of which contain a certain amount of clockwork-like mechanisms.

It is interesting to observe, though we cannot weigh its significance, if any, that the collector did not determine, in classifying the meters in paragraph 368, that they met the language of that section, "measuring the flowage of electricity." He said in his reports, quoted supra, that in his opinion the imported meters are "suitable for measuring electrical energy." That is true, but that is not the statutory provision.

For the foregoing reasons, we are unable to find any manifest error in the conclusion of the Customs Court that the "Toho" volt-ohm-milliampere meter and the "MO/38" milliammeter should be classified in paragraph 353 and not in paragraph 368. The judgment below is *affirmed*.

WORLEY, C.J., concurs in result only.

MARTIN, J., sat but did not participate because of illness.